# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | : | Bankruptcy Case No. 07-10146-PJW |
| MORTGAGE LENDERS NETWORK USA, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |
| | : | |
| | : | |
| MITCHELL HEFFERNAN, | : | Civil Action No. 1:07-cv-00268-*** |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| | : | |
| Appellee. | : | |
| | : | |

**BRIEF OF APPELLEE, STATE OF CONNECTICUT, IN OPPOSITION TO APPEAL BY MITCHELL HEFFERNAN OF THE DENIAL BY THE BANKRUPTCY COURT OF HIS REQUEST FOR AN INJUNCTION TO ENJOIN THE STATE FROM SEEKING TO INSTITUTE CRIMINAL PROCEEDINGS AGAINST HIM**

STATE OF CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
Francis A. Monaco, Jr. (DE #2078)
222 Delaware Avenue
15th Floor
Wilmington, DE 19801
(302) 252-4340 Fax (302) 661-7730

Co-Counsel for State of Connecticut

Joan E. Pilver, CT #08604
55 Elm Street, 4th Fl., P.O. Box 120
Hartford, Connecticut 06141-0120
Tel: (860) 808-5150  Fax: (860) 808-5383
and
Robert W. Clark CT #18681
55 Elm Street, 4th Fl., P.O. Box 120
Hartford, Connecticut 06141-0120
Tel: (860) 808-5261  Fax: (860) 808-5383

Assistant Attorneys General and Co-Counsel for
Appellee, State of Connecticut

Dated: December 20 2007

WCSR 3805009v1

## TABLE OF CONTENTS

I.      Statement of the Issues ........................................................................1

II.     Standard of Appellate Review ...........................................................2

III     Statement of the Case ........................................................................2

      A.     Nature, Course and Disposition ...............................................2

      B.     Statement of the Facts ...........................................................5

IV      Argument ........................................................................11

      A.     The Bankruptcy Court Correctly Held That It Could Not Enter An Injunction In Favor Of The Appellant Under The Equitable Authority Granted To It In 11 U.S.C. § 105(a) Because To Do So Would Conflict With 11 U.S.C. § 362(b)(1), Which Expressly Bars The Court From Enjoining The Commencement, Prosecution Or Continuation Of A Criminal Action Against A Debtor........................................................................11

      B.     To the Extent It May Be Appropriate For a Court to Examine Whether The Criminal Action Was Instituted In Good Faith, Such Determination Can Be Made By The State Court Hearing The Criminal Proceeding..............................18

      C.     The Actions Of DOL In Seeking the Criminal Prosecution Of Mitchell Heffernan For the Failure Of Mortgage Lenders to Pay the Wages of Its Employees Was Not For an Improper Purpose But Was Intended to Effectuate A Legitimate Public Policy........................................................................20

      D.     The Bankruptcy Court Correctly Held That Since It Lacked The Power To Enjoin Criminal Actions Brought Against A Debtor For Whom the Automatic Stay of 11 U.S.C. §362(a) Was Intended To Protect, It Certainly Could Not Do So On Behalf Of A Non-Debtor..........................................22

V.      Conclusion ........................................................................26

## TABLE OF AUTHORITIES

**Cases**

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986)……………...........................................................................................................23, 24

*American Film Technologies, Inc. v. Taritero (In re American Film Technologies, Inc.)*, 175 B.R. 847 (Bankr. D. Del. 1994)......................................................................23, 24

*Barnette v. Evans*, 673 F.2d 1250 (11th Cir. 1982)..................................................15, 20

*Bicro Corp. v. Mackes Electric (In re Bicro Corp.)*, 105 B.R. 255 (M.D. Pa. 1988)...................16

*Borman v. Raymark Industries, Inc.*, 946 F.2d 1031 (3d Cir. 1991)..............................................11

*Bratten v. Sciortino*, 55 B.R. 577  (Bankr. E.D. Va. 1985)........................................................22

*Davis v. Sheldon (In the Matter of Davis)*, 691 F.2d 176 (3d Cir. 1982)..............................passim

*Dettler Farms v. Clark Community Oil Co. (In re Dettler Farms)*, 58 B.R. 404 (Bankr. D.S.D. 1986)...........................................................................................................16

*Evans v. Bank of Eureka Springs (In re Evans), 245 B.R. 852  (Bankr. W.D. Ark. 2000)* ............23

*Fenner v. Boykin*, 271 U.S. 240 (1926).........................................................................................15

*Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F. 3d 203 (3d Cir. 2000)........12

*Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000).....................19, 20

*Hucke v. Oregon*, 992 F.2d 950 (9th Cir. 1993) ............................................................................19

*In re Allegheny International, Inc.*, 954 F.2d 167 (3d Cir. 1992)....................................................26

*In re Caldwell*, 5 B.R. 740 (Bankr. W.D. Va. 1980)............................................................ 16, 17

*In re Jerzak*, 47 B.R. 771 (Bankr. W.D. Wis. 1985).....................................................................17

*In re Klawson*, 50 B.R. 776 (D. Ind. 1985). .........................................................................14, 20

*In re Morristown & Erie R.R. Co.*, 885 F.2d 98 (3d Cir. 1989*)* .....................................................12

*In re Nanticoke Homes, Inc.*, No. 02-1670-SLR, 2003 U.S. Dist. LEXIS 17704 (D. Del. September 30, 2003) ...................................................................................................21

*In re Siciliano*, 13 F.3d 748, (3d Cir. 1994) ...................................................................................2

*Linan-Faye Constr. Co. v. Housing Auth. Of Camden*, 49 F.3d 915 (3d Cir. 1995).....................18

*Kelly v. Robinson*, 479 U.S. 36 (1986) ......................................................................................14

*Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194  (3d Cir. 1991) .........................11

*McCartney v. Integra National Bank North,* 106 F.3d 506 (3d Cir. 1997) ..................................11

*Mitchell Heffernan, James Pedrick v. Mortgage Lenders Network, USA, Inc.*
    Adv. No. 07-51246 (PJW)...............................................................................................25

*Mitchum v. Foster*, 407 U.S. 225 (1972) ....................................................................................14

*New Jersey Chamber of Commerce v. Hughey*, 868 F.2d 621 (3d Cir. 1989). ...............................2

*Official Comm. of Unsecured Creditors v. Bechtle (In re Labrum & Doak, LLP)*, 237 B.R. 275
    (Bankr. E.D. Del. 1999) ...............................................................................................24

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552 (1990) ..................................12

*Perez v. Ledesma*, 401 U.S. 82,  91 S. Ct. 674 (1971) .................................................................18

*Protarga v. Webb (In re Protarga)*, 329 B.R. 451 (Bankr. D. Del. 2005) ....................................24

*Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137 (3d Cir. 1985*)*........................................12

*Ticket Plus, Inc. v. Makoul (In re Ticket Plus, Inc.*), 103 B.R. 574 (Bankr. M.D. Pa. 1989).........23

*United States v. Ron Pair Enterprises*, 489 U.S. 235 (1989) .......................................................20

*United States v. Sutton*, 786 F.2d 1305 (5th Cir. 1986)...............................................................12

*Walsh v. Town of Stonington Water Pollution Control Auth.*, 250 Conn. 443 (Conn. 1999)........25

*Younger v. Harris*  401 U.S. 37 (1971) ............................................................................passim

## Statutes

11 U.S.C. §105 ......................................................................................................passim

11 U.S.C. § 362(a)(1)........................................................................................4, 11, 21

11 U.S.C. § 362(b)(1) ...........................................................................................passim

11 U.S.C. § 362(b)(4) ...........................................................................................21, 22

28 U.S.C. § 1334.................................................................................................................3

28 U.S.C. § 2283...............................................................................................................14

Conn. Gen. Stat. § 31-71b..............................................................................................8, 10

Conn. Gen. Stat. § 31-71g .........................................................................................8, 9, 25

Conn. Gen. Stat. § 31-76a..............................................................................................8, 10

Conn. Gen. Stat. § 54-2a....................................................................................................9

S. Rep. No. 95-989 p. 51 (1978); *as reprinted in* 1978 U.S.C.C.A.N. 5787.................11

**Rules**
Fed. R. Bankr. P. 7001(7)...................................................................................................2

**Treatises**
3 *Collier on Bankruptcy* 362-48 (15th ed. 1999)..........................................................19

The State of Connecticut ("Defendant," "Appellee" or "Connecticut"), by and through Richard Blumenthal, Attorney General for the State of Connecticut, hereby files this Brief of the Appellee in opposition to Mitchell Heffernan's Brief ("Movant" or "Appellant").

## I.    STATEMENT OF THE ISSUES BY APPELLANT

Whether the bankruptcy court erred in holding it had no authority under the broad equitable powers granted to it by 11 U.S.C. §105 to grant injunctive relief to Mitchell Heffernan, a director and former officer of the Debtor, who was indemnified by the Debtor under the Debtor's By-Laws, where the Debtor acknowledged the right to indemnification and joined in Mitchell Heffernan's Motion for Injunctive Relief, and where the State of Connecticut sought to arrest and criminally prosecute Mitchell Heffernan, under a strict liability statute, for the unpaid obligations of the Debtor, because the exceptions to the automatic stay provisions set forth in 11 U.S.C. §362(b)(1) prevented the bankruptcy court from granting the relief sought.

### STATEMENT OF THE ISSUES BY APPELLEE

Whether the bankruptcy court correctly held that the movant, Mitchell Heffernan, a non-debtor, director and former officer of a Chapter 11 debtor, was not entitled to the issuance of an order pursuant to 11 U.S.C. §105(a) enjoining the State of Connecticut from seeking to prosecute him for violation of the Connecticut criminal statutes, since 11 U.S.C. §362(b)(1) unequivocally exempts from the automatic stay the commencement or continuation of a criminal action against a debtor?

## II.    STANDARD OF APPELLATE REVIEW

This appeal raises a single question of law, over which this court has plenary review. *New Jersey Chamber of Commerce v. Hughey*, 868 F.2d 621, 629 (3d Cir. 1989). Any findings of fact by the bankruptcy court are not to be set aside unless clearly erroneous. *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994).

## III    STATEMENT OF THE CASE

### A.    NATURE, COURSE AND DISPOSITION

On February 5, 2007 (the "Petition Date"), Mortgage Lenders Network, USA, Inc. and its affiliates (hereinafter, "MLN" or the "Debtor") filed a petition for relief under Chapter 11 of Title 11 of the United States Code. On March 27, 2007, Mitchell Heffernan, a non-debtor, director and former officer of MLN initiated this contested matter[1] by filing a motion (the "Motion"), purportedly under 11 U.S.C. §105(a), seeking to enjoin Connecticut from commencing a criminal prosecution against him. The Motion sought entry of an immediate, *ex parte* order enjoining Connecticut from commencing a criminal prosecution pending an emergency hearing on the Motion. On March 29, 2007, the bankruptcy court denied Mr. Heffernan's request for *ex parte* relief and, instead, scheduled a hearing on the Motion for April 10, 2007. Later, on March 29, 2007, and without notice to Connecticut, Mr. Heffernan moved the bankruptcy court for reconsideration of the court's hearing notice and asked the court to

---

[1] Pursuant to Fed. R. Bankr. P. 7001(7), any bankruptcy action in which one party is seeking the entry of an injunction must be brought through the filing of a separate adversary proceeding rather than by motion. The bankruptcy court determined that it need not decide this issue, stating, "I don't have to address rightness [ripeness] or procedure, whether by motion or by adversary procedure," apparently because it was going to rule against the him as a matter of law. Transcript of Hearing Before the Honorable Peter J. Walsh, United States Bankruptcy Judge, dated April 10, 2007, 3:00 p.m., p. 44 (hereinafter, T. p._). Nevertheless, counsel for Mr. Heffernan conceded the point when Mr. Scandone stated, "There was no question, Your Honor, after reviewing the rules that it more likely than not should have been an adversarial proceeding." (Tr. p. 10).

2

either: (1) enter an immediate injunction pending a hearing, or (2) schedule an immediate hearing prior to April 10, 2007. The bankruptcy court did not rule on this request.

Connecticut opposed the Motion on the independent bases that: (1) requests for injunctive relief under 11 U.S.C. § 105(a) must be commenced by an adversary proceeding and not by a motion; (2) the matter was not ripe for consideration because the State's Attorney's Office,[2] had not signed an arrest warrant application and no Connecticut superior court judge had issued an arrest warrant, as is required in Connecticut before an arrest warrant may issue; (3) absent extraordinary circumstances not present here, bankruptcy courts are generally barred from enjoining state criminal proceedings under the *Younger*[3] abstention doctrine, which has been expressly adopted and applied by the United States Court of Appeals for the Third Circuit in a proceeding attempting to enjoin a criminal prosecution against a debtor under 11 U.S.C. §105(a), *see Davis v. Sheldon (In the Matter of Davis)*, 691 F.2d 176 (3d Cir. 1982); (4) the bankruptcy court lacked subject matter jurisdiction because Mr. Heffernan was a non-debtor and his effort to enjoin a potential criminal prosecution against him did not "arise in or under" title 11, within the meaning of 28 U.S.C. §1334; and (5) the motion impermissibly sought to enjoin the entire State of Connecticut, including its courts, from commencing a criminal prosecution against Mr. Heffernan, while bankruptcy courts only have the authority to enjoin individual litigants. *See Davis*, 691 F.2d at 178 n. 5.

---

[2] In Connecticut, the Office of the Attorney General is a separate entity from the Connecticut State's Attorneys Office. The Connecticut State's Attorneys, and not the Attorney General or his Assistant Attorneys General, are responsible for prosecuting crimes in Connecticut. The Attorney General is responsible for representing the State and its officials in civil proceedings, such as the present matter. Conn. Gen. Stat. § 3-125.

[3] *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971).

3

On April 10, 2007, a hearing was held to consider Mr. Heffernan's Motion. Counsel for Mr. Heffernan and Connecticut presented legal argument, but no witnesses were called by either party to testify. At the conclusion of oral argument, the bankruptcy court issued an oral ruling from the bench, holding that:

(a)     The bankruptcy court could not enter an injunction in favor of Mr. Heffernan, a non-debtor, under the equitable authority granted to it by 11 U.S.C. §105(a) because to do so would conflict with 11 U.S.C. §362(b)(1), which expressly bars the court from enjoining the commencement, prosecution, or continuation of a criminal action against a debtor;

(b)     To the extent it may be appropriate for a court to examine whether the criminal action was instituted in good faith, such determination can be made by the state court hearing the criminal proceeding;

(c)     The actions of Connecticut in seeking the criminal prosecution of Mr. Heffernan for his role in MLN's failure to pay the wages of its employees in a timely manner was not for an improper purpose but was intended to effectuate a legitimate public policy; and

(d)     Since the bankruptcy court lacked the power to enjoin criminal actions brought against a debtor for whom the automatic stay of 11 U.S.C. §362(a) was intended to protect, it certainly could not do so on behalf of a non-debtor such as Mr. Heffernan.

On April 18, 2007, the bankruptcy court entered its written Order denying Mr. Heffernan's Motion. Thereafter, on April 19, 2007, Mr. Heffernan filed a Notice of Appeal with this court. The appeal was docketed on May 18, 2007, and on July 17, 2007, pursuant to this Court's Order Assigning Adversary Proceeding to Mediation, Brian A. Sullivan held a mediation session with the parties. On July 27, 2007, Attorney Sullivan reported to the Court that the

4

matter had not been resolved and should proceed.  At this point, the case has been designated as one to be assigned to the judge who fills the vacancy left by the elevation of Judge Kent A. Jordan to the United States Court of Appeals for the Third Circuit.

## B.    STATEMENT OF THE FACTS

The only evidence either party attempted to submit in the bankruptcy court consisted of affidavits[4] and, in Mr. Heffernan's case, certain exhibits he attached to his memoranda of law. Apparently not content with the very limited amount of evidence he presented below, Mr. Heffernan has treated literally everything his attorneys alleged below, whether in motions, legal memoranda or oral argument, as "facts" for purposes of this appeal.  Even more striking is Mr. Heffernan's improper attempt to introduce new evidence on appeal, in the form of a "Declaration" from the Debtor's Chief Restructuring Officer, Daniel Scouler, which he has attached to his opening brief in this appeal.  (*See Exhibit A* to Heffernan's Opening Brief).  Mr. Heffernan fails to even acknowledge, much less cite any authority to support, his attempt to introduce new evidence into the record on appeal.

---

[4] The State submitted the sworn affidavit of Senior Assistant States Attorney Maureen Platt Temchin, the only state prosecutor assigned to investigate and pursue any criminal charges against Mr. Heffernan. (*See* Appendix to Heffernan Brief (hereinafter, "Heffernan App.") at 199). Mr. Heffernan also submitted an affidavit.  In his March 27, 2007 affidavit, submitted with his initial memoranda of law, (*see* Heffernan App. at 36), Mr. Heffernan swore to facts that he apparently hoped would establish that he lacked authority over wage decisions at MLN during the pertinent period and, in any event, acted pursuant to the advice of MLN's legal and financial advisors at the time. On April 10, 2007, after one of those professionals filed papers moving to strike Mr. Heffernan's sworn statements indicating that MLN's secured creditor instructed him not to pay the wages and commissions at issue on the grounds that those sworn statements were "patently false" and "scandalous," [*see* April 3, 2007 Motion to Strike of Residential Funding Company, LLC (Docket No. 396), Heffernan App. at 167], and just hours before the hearing on his Motion, Mr. Heffernan and Attorney James I. Stang, counsel for MLN, filed a "Stipulation Re Affidavit of Mitchell Heffernan" in which they agreed that Attorney Stang "did not advise the Debtor to pay or not pay the brokerage commissions." (Heffernan App. at 113). Although MLN had not previously taken a position on Heffernan's Motion to enjoin Connecticut from prosecuting him, counsel for the Debtor suddenly, and almost contemporaneously with the submission of Mr. Heffernan's stipulation, orally "joined" Heffernan's Motion at the April 10 hearing. The Debtor, however, has not joined in this appeal and, to date, has not filed any written submissions in connection with Heffernan's Motion or the present appeal.

5

Relying heavily on "facts" never proven below, Mr. Heffernan proceeds to argue throughout his brief that, in seeking to prosecute him, "the State" (although it is not clear which state actors) is attempting to use the threat of a criminal prosecution to hold *him* (not the Debtor) liable for what he calls the Debtor's prepetition debts. What Mr. Heffernan fails to acknowledge, however, is that the criminal statutes that he has been accused of violating do not provide for restitution, but rather the imposition of criminal fines and/or imprisonment. Nor do those laws, as Mr. Heffernan would apparently have the Court believe, provide that a person responsible for failing to pay wages in a timely manner is immune from prosecution if that person or some other person or entity tardily pays the wages at some later date.

For purposes of this appeal, however, what is even more important than his inaccurate recitation of the "facts" are the factual assertions that Mr. Heffernan *does not make*. Mr. Heffernan does not claim (and never alleged or proved below), for instance, that the State, in threatening to prosecute *him* for failing to pay wages in a timely manner, has ever sought to cause *MLN, the actual Debtor in the bankruptcy proceedings*, to pay any portion of the wages at issue out of the proceeds of the bankruptcy estate. While Mr. Heffernan argues that, at various times prior to the time he filed his Motion, his lawyers had conversations with various state officials who supposedly suggested that if *Mr. Heffernan, not the Debtor*, personally made restitution to the Debtor's employees, they may not have prosecuted him for his role in causing MLN to fail to pay its employees within the timeframes required by Connecticut law, this claim is entirely unsupported by any record evidence. Moreover, the officials who allegedly spoke to

Mr. Heffernan's lawyers do not have the authority under Connecticut state law to commence a criminal prosecution against Mr. Heffernan.[5]

Because Mr. Heffernan has not proven or alleged that Connecticut seeks to extract anything from the MLN bankruptcy estate to the detriment of MLN creditors and because the action Mr. Heffernan seeks to enjoin is a criminal prosecution, every single legal authority Mr. Heffernan relies upon in his brief is either distinguishable or inapposite. Thus, while Connecticut vigorously disputes many of the unsupported factual assertions made in Mr. Heffernan's brief, the bankruptcy court correctly concluded that their resolution is ultimately unnecessary to the outcome of the narrow legal issues raised by this appeal.

The very limited factual record below reveals the following pertinent facts. According to MLN's submissions in the bankruptcy court, MLN was a privately held Delaware Corporation founded approximately ten years ago with seven (7) employees. As of November, 2006, the Debtor employed approximately 1,780 employees across the nation, some of whom worked in Connecticut, either at its Middletown, Connecticut headquarters or the other regional offices in the State. A majority of the Debtor's business involved the origination of wholesale loans to credit-impaired borrowers (frequently referred to as "sub-prime"), who generally were unable to obtain financing from traditional banks or savings and loan associations. The Debtor was the fifteenth largest subprime-lender in the United States in the third quarter of 2006, with $3.3

---

[5] Although in his legal argument Mr. Heffernan claims that his lawyers spoke with Assistant State's Attorney John Cashman prior to the time he brought the Motion, Mr. Cashman was never assigned to the matter and the State, in any event, disputes these claims. As the record makes clear, Senior Assistant State's Attorney Maureen Platt was assigned to Mr. Heffernan's case and "retain[ed] independent discretion to either pursue or not pursue [his] arrest." (Temchin Aff. ¶ 10, Heffernan App. 202).

billion in loan originations for that quarter. Prior to the Petition Date, the Debtor had failed to pay a significant amount of wages and commissions to employees, totaling at least $1.7 million.[6]

Under Connecticut law, any employer *or any officer or agent of an employer or any other person authorized by an employer to pay wages* who violates any provision of the Connecticut statutes governing the payment of wages may be fined not less than $2,000.00 nor more than $5,000.00 or imprisoned not more than five years for each offense if the total amount of all unpaid wages owed to an employee is more than $2,000.00. Conn. Gen. Stat. §31-71g(1); Heffernan App. 192. Under Connecticut's wage laws, it is no defense that the malfeasor later made restitution to the employees by paying the wages after they were due under state law. Under the law, late payment of wages incurs the same penalties as non-payment. *See* Conn. Gen. Stat. § 31-71b(a); Heffernan App. 191 (requiring employers, by themselves, their agents or representatives, to "pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer, in cash, by negotiable checks or, upon an employee's written request, by credit to such employee's account in any bank which has agreed with the employer to accept such wage deposits.")

Connecticut law authorizes the Commissioner of the Department of Labor ("DOL") to investigate any claim that wages have not been paid. Among other things, the Labor Commissioner is authorized to enter a place of business or employment, examine payroll and other records, interview employees, call hearings, administer oaths, take testimony, and issue subpoenas for the attendance of witnesses and the production of books and records. *See* Conn. Gen. Stat. § 31-76a; Heffernan App. 195. However, once the investigation is complete, the

---

[6] The precise amount actually due remains a matter of dispute among the parties, but it is substantial in any event. (Tr. pp. 21-22).

Labor Commissioner must ask a prosecutor within the State's Attorney's Office to seek an arrest warrant. In order to make such a request, a member of DOL must provide the State's Attorney's Office with an application containing a sworn affidavit attesting to facts that the affiant believes constitute probable cause that one of the persons or entities described in Section 31-71g has violated a provision of the wage statutes. *See* Conn. Gen. Stat. §54-2a; Heffernan App. 198.

Once the State's Attorney's Office receives an application from DOL or some other investigating agency, such as the local or state police, one or more prosecutors review the application to make an independent determination of whether probable cause exists to arrest the suspect for having committed a crime. *See* Affidavit of Senior Assistant States Attorney Maureen Platt Temchin at ¶ 6, Heffernan App. at 200. If a prosecutor determines that probable cause exists, he or she may apply to a superior court judge for an arrest warrant. *Id.* ¶ 7. The judge then makes his or her own independent determination of whether there is probable cause to issue an arrest warrant. *Id.* Specifically, Connecticut law provides that a superior court judge may issue "bench warrants of arrest upon application by a prosecutorial official if the court or judge determines that the affidavit accompanying the application shows that there is probable cause to believe that an offense has been committed and that the person complained against committed it." *Id.*; *see also* Conn. Gen. Stat. § 54-2a(a)(1). If, and only if, a superior court judge issues a bench warrant for a person's arrest, the person named in the warrant may be arrested by a proper officer and brought before a court to face the charges against him or her. *Id.*; *see also* Conn. Gen. Stat. § 54-2a(d)-(e); Heffernan App. 198-99.

Prior to and/or subsequent to the filing of the bankruptcy petition, DOL received a number of complaints from Connecticut residents indicating that they had not been paid wages

9

and commissions that they believed were due to them. *See* Temchin Aff. ¶8. Following an

investigation by DOL, on March 8, 2007, a Wage Enforcement Agent for DOL provided the

State's Attorney's Office in Middletown, Connecticut with an application for an arrest warrant

for Mr. Heffernan who, prior to the bankruptcy, was the President and Chief Executive Officer of

the Debtor. *Id.*

      In the arrest warrant application, the DOL Wage Enforcement Agent swore that he had,

pursuant to his authority under Conn. Gen. Stat. § 31-76a, conducted an investigation in response

to numerous claims for unpaid wages that had been filed with DOL. *Id.* As a result of that

investigation and audit, the agent requested that an arrest warrant issue for Mr. Heffernan, who,

as the President and Chief Executive Officer of MLN during the relevant period was responsible

for MLN's failure to pay weekly, all monies due to employees as required by section 31-71b of

the Connecticut General Statutes. *Id.* ¶ 9. Specifically, the agent sought an arrest warrant for

Mr. Heffernan for 61 separate counts of wage violations. *Id.* The agent alleged that the 61

separate wage violations amounted to approximately $2.5 million in unpaid wages, with claims

for unpaid wages ranging from $178.00 to $310,380.29. *Id.* As of the date of the court hearing

on April 10, 2007, the State's Attorney's Office had not signed the arrest warrant or sought the

issuance of a warrant for Mr. Heffernan's arrest from a superior court judge. *Id.* ¶ 10; *see also*

Tr. p. 13.

      On March 27, 2007, Mr. Heffernan filed his Motion in MLN's bankruptcy case, seeking

to enjoin Connecticut from commencing a criminal prosecution against him.

## IV    ARGUMENT

**A.    THE BANKRUPTCY COURT CORRECTLY HELD THAT IT COULD NOT ENTER AN INJUNCTION IN FAVOR OF THE APPELLANT UNDER THE EQUITABLE AUTHORITY GRANTED TO IT IN 11 U.S.C. §105(a) BECAUSE TO DO SO WOULD CONFLICT WITH 11 U.S.C. §362(b)(1), WHICH EXPRESSLY BARS THE COURT FROM ENJOINING THE COMMENCEMENT, PROSECUTION OR CONTINUATION OF A CRIMINAL ACTION AGAINST A DEBTOR.**

As described by the Third Circuit Court of Appeals, "[t]he automatic stay is a central concept in bankruptcy law."[7] *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1032 (3d Cir. 1991). However, "[a]lthough the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor'…. As a consequence, 'it is universally acknowledged that an automatic stay of proceedings accorded by §362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the … debtor.'" *McCartney v. Integra National Bank North*, 106 F.3d 506, 509-510 (3d Cir. 1997) [quoting *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991)] (other citations omitted). Further, among the exceptions to the applicability of the automatic stay is §362(b)(1), which exempts from the stay "the commencement or continuation of a criminal action or proceeding against the debtor." As stated in the Senate Report, the exception from the automatic stay ensures that "[t]he bankruptcy laws are not a haven for criminal offenders." S. Rep. No. 95-989 p. 51 (1978); *as reprinted in* 1978 U.S.C.C.A.N. 5787 Further, "[s]ection 362(b)(1) ensures that the automatic stay provision is not construed to bar

---

[7] Section 362(a) provides in relevant part: "Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title … operates as a stay, applicable to all entities, of – (1) the commencement or continuation including the issuance or employment of process of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title…".

federal or state prosecution of alleged criminal offenses." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S. Ct. 2126 (1990).

Although 11 U.S.C. §105(a) [8] provides bankruptcy courts with general equity powers to "issue any order," it "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986). Section 105 does not "give the court the power to create substantive rights that would otherwise be unavailable under the Code." *In re Morristown & Erie R.R. Co.,* 885 F.2d 98, 100 (3d Cir. 1989*); see also, Gillman v. Continental Airlines (In re Continental Airlines),* 203 F. 3d 203, 211 (3d Cir. 2000) ("section 105(a) has a limited scope"); *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985*).*

Here, Mr. Heffernan, a non-debtor, is asking this Court to overrule the  bankruptcy court's decision holding that it would not be a proper exercise of the court's equitable power under Bankruptcy Code §105(a) to enter an injunction to enjoin the State of Connecticut from instituting criminal proceedings against him, because to do so would, "fly in the face of Section 362(b)(1), which as we all know, says that the stay does not apply to the commencement or prosecution or continuation of a criminal action." (Tr. p. 44). The bankruptcy court's decision was correct, was firmly based upon clear and long-established legal precedent and, therefore, should be upheld by the district court.

---

[8] 11 U.S.C. §105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

Mr. Heffernan's reliance on Bankruptcy Code §105(a) to support his request for an injunction is misplaced. The Bankruptcy Code offers no support for his quest to extend the automatic stay to Connecticut through the use of §105(a). In fact, not only is there lacking a substantive provision in the Bankruptcy Code to support Mr. Heffernan's proposed use of §105(a), but the relief sought directly conflicts with §362(b)(1), which expressly exempts from the automatic stay criminal proceedings against debtors. Here, of course, Mr. Heffernan is not even a debtor in bankruptcy. As a result, the relief he seeks not only conflicts with § 362(b)(1), but actually goes far beyond what Congress even contemplated needing to address when it created the exception to the automatic stay that is contained in that subsection.

The circumstances under which a bankruptcy court may enjoin criminal proceedings in a state court are narrowly circumscribed by the doctrine of *Younger v. Harris* 401 U.S. 37 (1971). In *Younger*, the United States Supreme Court reaffirmed what it called the longstanding public policy against federal court interference with state court proceedings. *Id.* at 43. Thus, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45. The court stated that the circumstances in which a federal court may enjoin criminal proceedings in a state court are narrow:

> [W]e have concluded that the judgment of the District Court, enjoining Younger [a state District Attorney] from prosecuting under these [state] statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances....
>
> *Ex parte Young* and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state and must decide when and how

13

> this it to be done. The accused should first set up and rely upon his defense in the
> state courts, even though this involves a challenge of the validity of some statute,
> unless it plainly appears that this course would not afford adequate protection.

*Younger*, 401 U.S. at 41-45 (citation omitted).

The *Younger* principal was cited with approval in *Kelly v. Robinson*, 479 U.S. 36, 107

S.Ct. 353 (1986), in which the Supreme Court held that criminal restitution obligations are not

dischargeable in a Chapter 7 proceeding. *Kelly*, 479 U.S. at 47. The Supreme Court pointed out

in *Kelly* that "the State's interest in administering their criminal justice systems free from federal

interference is one of the most powerful of the considerations that should influence a court

considering equitable types of relief." *Kelly*, 479 U.S. at 49, citing *Younger*, 401 U.S. at 44-45.

While the bankruptcy court is granted limited injunctive powers under Bankruptcy Code

§105(a) to override the general bar on enjoining proceedings in a state court,[9] that provision does

not "qualify in any way the principles of equity, comity, and federalism that must restrain a

federal court when asked to enjoin a state court proceeding." *Davis v. Sheldon (In the Matter of

Davis)*, 691 F.2d 176, 178  (3d Cir. 1982) (quoting, *Mitchum v. Foster*, 407 U.S. 225, 243

(1972)).

In *Davis*, a creditor of the debtors instituted a criminal complaint against one of the

debtors for purchasing goods from the creditor and paying for the goods with a check that was

later dishonored at the bank.[10] The debtors thereafter sought to enjoin the pending criminal

---

[9] 28 U.S.C. §2283. "A bankruptcy court may not enjoin the state court directly." *Davis* at 178 f.n. 5. Here, and
contrary to that limitation, Mr. Heffernan seeks to enjoin Connecticut rather than individual actors.
[10] In his brief, Mr. Heffernan makes only passing reference to the *Younger* abstention doctrine. In a footnote, he
merely alleges that MLN's bankruptcy case was filed "long before Connecticut pronounced to the world the
impending arrest and prosecution of Heffernan for the debts of the Debtor on March 20, 2007." (Heffernan Br. at
n.8). It is not at all clear, however, why Heffernan believes the date of *MLN's* bankruptcy filing is at all relevant to
the *Younger* analysis. It is well-settled that the *Younger* abstention doctrine applies whether criminal proceedings
are actually pending or threatened, but not yet instituted. *See In re Klawson*, 50 B.R. 776, 778 (N.D. Ind. 1985)

proceedings. The Court of Appeals affirmed the refusal of both the bankruptcy court and district court to grant an injunction. Quoting from *Younger v. Harris*, the court stated, "it is a basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43-44.

Mr. Heffernan did not allege any facts nor did he introduce any evidence at the hearing on his Motion demonstrating that he would suffer any irreparable injury from the possible state prosecution. Nor could he. It is clear that the "cost, anxiety and inconvenience" of defending oneself in a good faith criminal prosecution does not constitute irreparable injury." *Davis* at 178, quoting *Younger*, 401 U.S. at 46. Neither could he claim that the bankruptcy estate would be irreparably harmed. He is not operating the Debtor and, as recognized by the bankruptcy court, the Debtor is in the process of liquidating, not reorganizing. (Tr. p. 45). Further, *Younger* makes it clear that "even irreparable injury is insufficient unless it is "both great and immediate." [11]  *Id.*

While some courts have, under extremely narrow circumstances, enjoined *certain private parties from participating in threatened criminal prosecutions against debtors*, as opposed to non-debtors like Mr. Heffernan, they have done so only where it was clear that those private parties were seeking to use the threat of a criminal process to recover assets *from a debtor's estate*, thereby extracting an unfair preference over other creditors in contravention of the bankruptcy code's priority rules for distribution of estate assets to different classes of creditors.

---

[citing *Fenner v. Boykin*, 271 U.S. 240 (1926)]. In this case, Heffernan, himself, has alleged that, at the time he sought to enjoin a criminal prosecution, a criminal prosecution had been threatened.

[11] Mr. Heffernan is seeking to enjoin a criminal proceeding that has not been filed, to protect himself from the harm that might befall someone who is not protected by the automatic stay. As described in *Barnette v. Evans*, 673 F.2d 1250, 1252 (11th Cir. 1982) dealing with an analogous situation, "if we had some ham, we could have ham and eggs, if we had some eggs."

Thus, cases such as *Dettler Farms v. Clark Community Oil Co. (In re Dettler Farms)*, 58 B.R. 404 (Bankr. D.S.D. 1986); *Bicro Corp. v. Mackes Electric (In re Bicro Corp.)*, 105 B.R. 255 (M.D. Pa. 1988), and *In re Caldwell*, 5 B. R. 740 (Bankr. W.D. Va. 1980), all cited by Mr. Heffernan in his brief, are distinguishable because they all involved attempts *by creditors* to recover money from a bankruptcy estate to the detriment of other creditors and/or to deprive *a debtor* of his statutory right to have pre-petition debts discharged.

In *Caldwell*, for instance, *a debtor* sought to enjoin *a creditor* from seeking a criminal prosecution against him on the grounds that the creditor was using the criminal process to extract money from the bankruptcy estate *in violation of the automatic stay*. *Caldwell*, 5 B.R. at 742. Similarly, in *Dettler Farms*, the court enjoined a *creditor* from participating in a criminal prosecution against *a debtor* because the evidence showed that the creditor was seeking to utilize the criminal process to collect an unsecured debt *from the debtor to the disadvantage of other similarly situated creditors*. *Dettler Farms*, 58 B.R. at 407. The same circumstances led a court to enjoin *a creditor* in *In re Bicro Corp.*, where the court found that an injunction was necessary to prevent *a creditor* from participating in a criminal case that it found would permit the creditor to extract a preference from the bankruptcy estate not afforded to other similarly situated creditors. *Id.* at 258.

Here, of course, and unlike in any of these cases, Mr. Heffernan is not a debtor and, as a result, there is no danger that a criminal prosecution will have a detrimental effect on the estate or its creditors. Moreover, and unlike in the present case, the plaintiffs in those cases only sought injunctions against the complaining parties, not against state prosecutors. In fact, in *Caldwell*, the court made it clear it was not seeking to enjoin the criminal prosecution itself:

"This order in no way seeks nor is intended to restrict or be construed as interfering with the Prosecuting Attorney of the City of Salem or the General District Court of the City of Salem in the enforcement of the criminal laws of the Commonwealth of Virginia. . . ." *Caldwell*, 5 B.R. at 742.

While in *In re Jerzak*, 47 B.R. 771 (Bankr. W.D. Wis. 1985), the court did enter an injunction to stop pending criminal proceedings, questioning the motives of the prosecutor, it also was in a case *concerning a debtor*, not a third party, and a creditor *seeking to be paid an otherwise dischargeable debt*. Further, in granting the injunction, the court disagreed in part, with the reasoning of the Third Circuit Court of Appeals in *Davis v. Sheldon,* 691 F.2d at 178, which stated that a prosecutor's questionable motives could be raised as a defense in the state court. *Jerzak*, 47 B.R. at 773 n.3.

The other class of cases Mr. Heffernan cites, in which courts enjoined actions against nondebtors because of the potential impact those cases could have on the debtors, (*see* Heffernan Br. at 29-32), involved *civil actions* brought by private litigants that bankruptcy courts enjoined pursuant to or in furtherance of the automatic stay. Here, of course, the proceeding Mr. Heffernan seeks to enjoin is a *criminal prosecution*, which is exempt from the automatic stay under 11 U.S.C. § 362(b)(1). As a result, and as is set forth more fully in *Section IV.D* of Connecticut's brief, *infra*, all of these cases are inapposite.

**B.    TO THE EXTENT IT MAY BE APPROPRIATE FOR A COURT TO EXAMINE WHETHER THE CRIMINAL ACTION WAS INSTITUTED IN GOOD FAITH, SUCH DETERMINATION CAN BE MADE BY THE STATE COURT HEARING THE CRIMINAL PROCEEDING.**

While in *Younger v. Harris* the court generally acknowledged that a prosecution brought in bad faith might permit a court to grant equitable relief, such an exception is to be narrowly construed.  ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate").  *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S. Ct. 674 (1971).

Although Mr. Heffernan vaguely asserted (through his reference to unsubstantiated newspaper stories), that the complaining party, DOL, directly and through its counsel, the Office of Attorney General, were "trying to use this criminal statute to collect prepetition commissions," (presumably in the form of criminal restitution), such motives even if true, do not rise to the level of bad faith contemplated by the Supreme Court.  Further, it was Mr. Heffernan's burden to prove bad faith.  *Linan-Faye Constr. Co. v. Housing Auth. Of Camden*, 49 F.3d 915, 924 (3d Cir. 1995) ("As a general principle, the law presumes that public officials conduct themselves in good faith").  At the hearing on his Motion, Mr. Heffernan introduced no evidence whatsoever to support a claim that DOL or the Connecticut State's Attorney's Office (which has not yet sought the issuance of a warrant from the superior court), was acting in bad faith.  As in the *Davis* case, Mr. Heffernan made no showing that either DOL or the Attorney General had any reason to doubt the validity of the charges, that the prosecutor or superior court judge would fail to exercise independent judgment in determining whether to institute the prosecutions, or that the complaining witnesses had insufficient evidence to support their

18

allegations.  The bankruptcy court directly asked Debtor's counsel whether wages were owed to

its former employees:

> The Court:  Okay.  Well is it fair to say that the company acknowledges that there
> are substantial prepetition commissions owed to former employees?
>
> …
>
> Ms. Davis Jones:  Thank you, Your Honor.  I confirmed with Mr. Schuller.  Your
> Honor, we have --- the Debtor acknowledges that there are some prepetition
> commissions that have not been paid.

(Tr. p. 22).

More importantly, however, the motives of the complaining party, in this case  DOL, are

not relevant to the good faith/bad faith analysis.  As the court stated in *Davis*, "We cannot

require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime

before proceeding with what appears to be an otherwise valid criminal prosecution.  Under these

circumstances, *the intentions of the complaining witnesses are not controlling in judging the*

*good faith of a criminal prosecution*."  *Davis*, 691 F.2d at 179 (emphasis added).  More recently,

in *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000), in an *en banc*

decision, the court reconsidered its earlier holding to the contrary in *Hucke v. Oregon*, 992 F.2d

950 (9th Cir. 1993), and held that in the bankruptcy context, *even* the motivation of the prosecutor

is irrelevant.  ([T]here is "no rationale or justification for severing economic and noneconomic

ramifications of the debtor's criminal conduct;" citing 3 *Collier on Bankruptcy* 362-48 (15[th] ed.

1999)).

Consistent with these rulings, the bankruptcy court correctly determined that it was not

within its province to determine whether the criminal prosecution was being effected in good or

bad faith:  "[T]here's nothing in the Bankruptcy Code, particularly Section 362(b)(1), which

suggests that this court should examine the motives behind a criminal prosecution".  (Tr. p. 45).

Section 362(b)(1) is an entirely objective provision, that is, "it does not provide any exception for prosecutorial purpose or bad faith." *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1085. Where as here, a statutory command of the Bankruptcy Code is clear, it must be enforced according to its terms. *Id.* (citing *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241 (1989). "[T]o do otherwise, would insert phrases and concepts into the statute that are not there." *Gruntz* at 1085.

To the extent Mr. Heffernan wished to pursue a claim of bad faith, it could have been and still can be raised with the prosecutor or ultimately with the state court considering the matter. "[T]here has been no showing that Delaware courts have inadequate procedures for hearing the federal challenges to a judgment of restitution." *Davis,* 691 F.2d at 178; *Barnette v. Evans*, 673 F.2d at 1252 ("If Barnette believed the prosecution for theft was a subterfuge for collection of a debt, he could have raised the issue as a defense in the state criminal proceeding"); *In re Klawson*, 50 B.R. 776, 779 (D. Ind. 1985). ("even if the prosecution was for debt collection, a bankruptcy court should not enjoin the state criminal proceeding if the debtor could adequately raise the debt collection defense in the state proceeding").

### C. THE ACTIONS OF DOL IN SEEKING THE CRIMINAL PROSECUTION OF MITCHELL HEFFERNAN FOR THE FAILURE OF MORTGAGE LENDERS TO PAY THE WAGES OF ITS EMPLOYEES WAS NOT FOR AN IMPROPER PURPOSE BUT WAS INTENDED TO EFFECTUATE A LEGITIMATE PUBLIC POLICY.

Even if the motives of the complaining party were relevant in determining the good faith/bad faith of the criminal action, after hearing from both sides, the bankruptcy court correctly concluded that DOL actions were not taken for improper or pecuniary reasons but in furtherance of legitimate public goals.

Mr. Heffernan never asserted, and certainly never proved, that the criminal complaint requested by DOL was motivated for any reason other its desire to fulfill its duty to protect the interests of hundreds of injured wage earners in Connecticut and to ensure that employees who perform work receive fair compensation for that work. Unlike in the *Davis* case in which the complainants were creditors of the debtor, DOL has no personal economic interest in seeking the criminal prosecution of Mr. Heffernan.

In fact, in its ruling, the bankruptcy court compared DOL to the Maryland Department of Consumer Protection in *In re Nanticoke Homes, Inc.*, No. 02-1670-SLR, 2003 U.S. Dist. LEXIS 17704 (D. Del. September 30, 2003), in which *a debtor* sought to enjoin a state consumer protection department from continuing an administrative enforcement action that included a claim for restitution. In that case, the bankruptcy court found that the state agency was acting in violation of the automatic stay in seeking an order of restitution against the debtor. On appeal, Chief District Judge Robinson disagreed, holding that the exception to the stay incorporated in 11 U.S.C. §362(b)(4) (allowing a governmental unit to continue to enforce its police and regulatory powers), overrode the "breathing spell" offered the debtor in §362(a)(1). As quoted by the bankruptcy court in its decision here, Judge Robinson found that the action by the consumer protection department "'was not intended to protect the government's interests in the Debtor's property but related to matters of public safety and welfare and was intended to effectuate public policy.'" (Tr. p. 47); *Nanticoke* at. *7. The bankruptcy court in the instant matter correctly ruled that this principle applied equally to this case and that Connecticut's wage laws also reflect a valid public purpose related to important matters of public safety and welfare. The bankruptcy court concluded the point by stating that in *Nanticoke*, the court was dealing

with §362(b)(4), a more ambiguous Code provision than §362(b)(1), and therefore, if the district court could find that the stay was inapplicable in that case, concerning as it did a debtor, then §362(b)(1) certainly would be inapplicable in a case like this one, involving a threatened criminal prosecution of a non-debtor. (Tr. p. 47).

Further, Mr. Heffernan never asserted, much less proved, that *the State's Attorney* that was actually assigned to his case, the only Connecticut official capable of pursuing an arrest warrant from a superior court judge, was considering whether to prosecute him for any reason other than to vindicate the public interest and follow the direction of the Connecticut legislature, which sought to punish wrongdoers for violating criminal statutes and to deter others who might consider withholding wages when their businesses were similarly faced with financial difficulties. "When the state legislature expresses so great a concern for a problem that it makes commission of an act a crime, a civil court such as this, albeit a federal court, must give some degree of deference to that expressed policy." *Bratten v. Sciortino*, 55 B.R. 577, 579 (Bankr. E.D. Va. 1985). The fact that the prosecutor did not immediately act upon referral to it by DOL is indicative of its exercise of independent judgment in reviewing the matter and determining for itself whether there was probable cause sufficient to present a warrant to a superior court judge for his review and signature.

### D.    THE BANKRUPTCY COURT CORRECTLY HELD THAT SINCE IT LACKED THE POWER TO ENJOIN CRIMINAL ACTIONS BROUGHT AGAINST A DEBTOR FOR WHOM THE AUTOMATIC STAY OF 11 U.S.C. §362(a) WAS INTENDED TO PROTECT, IT CERTAINLY COULD NOT DO SO ON BEHALF OF A NON-DEBTOR.

Unlike in the *Davis* case, in which the court considered but then rejected *the debtors' claim* that the remedy at law was inadequate because any possible restitution order arising from

his criminal conviction would undercut his discharge and "fresh start", Mr. Heffernan, *is not a debtor in bankruptcy*. The obvious weakness of Mr. Heffernan's argument was noted by the bankruptcy judge when he stated, "Indeed, if the State brought the criminal action against the debtor, I could not enjoin that State conduct for the reason articulated in Section 362(b)(1). It seems to me that it follows that the same result must pertain where the subject of the criminal action is *not even the debtor but only a former officer of the debtor*." (Tr. p. 48) (Emphasis added). Mr. Heffernan asserted in his Motion that he should not be held criminally responsible for the failure of the company to pay wages because he was not operating the business during the forty-five (45) day period prior to the filing of the bankruptcy. However, he stated no reason why such a defense could not be raised by him in a state court. In fact, counsel for the debtor, Laura Davis Jones, expressly acknowledged that point:

> The Court: Okay. And if they're in dispute in this case I assume they will be in dispute in any criminal proceeding?
> Ms. Davis Jones: I would expect, Your Honor, there are defenses, your Honor and no matter where the matter pends.

Tr. p. 23-24.

*See Evans v. Bank of Eureka Springs (In re Evans)*, 245 B.R. 852 (Bankr. W.D. Ark. 2000); ("Defendant will have every opportunity in the state court to offer evidence of mitigation and defenses to the allegations"); *Ticket Plus, Inc. v. Makoul (In re Ticket Plus, Inc.)*, 103 B.R. 574, 577 (Bankr. M.D. Pa. 1989) (defense to the criminal action may be raised in the state court and had no bearing on whether to issue an injunction).

Mr. Heffernan's reliance on Bankruptcy Code §105(a) to support his request for injunctive relief is misplaced. Mr. Heffernan cites cases such as *American Film Tech., Inc. v. Taritero (In re American Film Tech., Inc.)*, 175 B.R. 847 (Bankr. D. Del. 1994), and *A.H. Robins*

*Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251 (1986),

for the proposition that bankruptcy courts may, under the authority of §105(a), enter injunctions

staying actions against non-debtors.  However, as noted by the bankruptcy court, (Tr. p. 45),

those cases are easily distinguishable from the case at bar.  *American Film Tech., Inc.*, for

example, concerned the power of the court to enter injunctions to enjoin *civil* proceedings.

Likewise, *Protarga v. Webb (In re Protarga)*, 329 B.R. 451 (Bankr. D. Del. 2005), also cited by

Mr. Heffernan in support of the court's authority under 11 U.S.C. §105(a) to enter injunctions,

concerned *a civil suit* between a debtor and an employee seeking payment of back wages.  The

standards for injunctive relief that are applicable in civil proceedings are entirely different from

the considerations that apply here.  *See Official Comm. of Unsecured Creditors v. Bechtle (In re*

*Labrum & Doak, LLP)*, 237 B.R. 275, 305-306 (Bankr. E.D. Del. 1999) (irreparable harm to the

estate or reorganization process; likelihood of successful reorganization; balance of harm and

public interest favoring complainant).

 Mr. Heffernan argues that because the Debtor's By-Laws purportedly give him a right of

indemnification for business-related costs and expenses, including attorney's fees, he is entitled

to injunctive relief since the costs of his defense to a criminal action would give rise to a claim

by him against the bankruptcy estate.  It should be noted at the outset however, that the

bankruptcy court has made no finding as to Mr. Heffernan's right of indemnification.  Mr.

Heffernan is relying upon the off-the-cuff remark from Debtor's counsel to the effect that he may

have such rights under the By-Laws as firmly establishing his entitlement. (Tr. p. 43).  Notably,

since the date of the court hearing on this matter, Mr. Heffernan instituted an adversary

proceeding against the Debtor to establish such rights and whether he is entitled to

indemnification and if so, the priority status of the claim. Thereafter, the matter was voluntarily dismissed by stipulation and no determination of Mr. Heffernan's rights have been made to date. (*Mitchell Heffernan, James Pedrick v. Mortgage Lenders Network, USA, Inc*. Adv. No. 07-51246 (PJW) (Doc. Id. #21).

Further, even if Mr. Heffernan is entitled to indemnification for his costs, this does not override the express exception created by Congress in §362(b)(1) and forcefully acknowledged by federal courts. While in *civil* cases, some courts have exercised their authority under §105(a) to enjoin civil proceedings against corporate officers when the outcome would have a significant impact upon the debtor, Mr. Heffernan has cited no cases in his brief, nor is Connecticut aware of any case, where *a criminal action* brought against an officer was enjoined because of his indemnification rights against the debtor.

Finally, and unlike in the cases he cites in his brief, a criminal prosecution of Mr. Heffernan will not have a conclusive collateral estoppel effect on the Debtor *with respect to the amount* of unpaid wages and commissions, because the criminal statutes at issue do not require the State to prove the precise amount of those wages and commissions.[12] Rather, the State is only required to prove that the accused failed to pay wages equaling a certain minimum threshold amount. *See* Conn. Gen. Stat. § 31-71g. In any event, because the State is required to prove a criminal case beyond a reasonable doubt, neither Mr. Heffernan nor the Debtor can possibly claim prejudice because some aspect of the wage claims might be litigated in a state criminal prosecution instead of a contested matter before the bankruptcy court, where the

---

[12] Under Connecticut law, collateral estoppel, also known as "[i]ssue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, *and that determination is essential to the judgment*." *Walsh v. Town of Stonington Water Pollution Control Auth.*, 250 Conn. 443, 460 (Conn. 1999) (emphasis added).

"preponderance of the evidence" standard applies.  *See In re Allegheny International, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

## V.    CONCLUSION

Congress, through its adoption of 11 U.S.C. §362(b)(1) creating an exception to the automatic stay for criminal proceedings, and the federal courts, including the Third Circuit, have made it clear that the states' interests in administering their criminal statutes overrides a debtor's "fresh start", as important as that may be.  In this case, involving as it does a nondebtor, even that limitation is inapplicable.

For the foregoing reasons, this Court should affirm the bankruptcy court's order denying the Motion.

Dated: December 2007

RESPECTFULLY SUBMITTED,
APPELLEE,

STATE OF CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: _____
WOMBLE CARLYLE SANDRIDGE
    & RICE PLLC
Francis A. Monaco, Jr. (DE #2078)
222 Delaware Avenue
15th Floor
Wilmington, DE 19801
Tel:  (302) 252-4340
Fax:  (302) 661-7730
Email:  Fmonaco@wcsr.com

Joan E. Pilver, CT #08604
55 Elm Street, 4th Fl., P.O. Box 120
Hartford, Connecticut 06141-0120
Tel:  (860) 808-5020
Fax:  (860) 808-5383
Email:  Joan.Pilver@PO.STATE.CT.US

Robert W. Clark CT #18681
Assistant Attorney General
55 Elm Street, 4th Fl., P.O. Box 120
Hartford, Connecticut 06141-0120
Tel:  (860) 808-5
Fax:  (860) 808-5383
Email:  Robert.Clark@PO.STATE.CT.US

## CERTIFICATE OF SERVICE

I, Heidi E. Sasso, certify that I am not less that 18 years of age, and that I caused service of the foregoing document to be made via electronic notice and via email on December 20, 2007 upon:

James E. O'Neill, III
Pachulski, Stang, Ziehl & Jones
919 N. Market Street
Wilmington, DE 19801
joneill@pzsj.com

Albert M. Greto
O'Brien, Belland & Bushinsky, LLC
1701 Shallcross Avenue, Suite C
Wilmington, DE 19801
algreto@gretolaw.com

James Edward Drnec
Balick & Balick, LLC
711 King Street
Wilmington, DE 19801
jrdnec@balick.com

Judith P. Rodden
Pozzuolo & Perkiss, PC
2033 Walnut Street
Philadelphia, PA 19103
judy@pozzuolo.com

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: December 20, 2007            /s/ Heidi E. Sasso
                                    Heidi E. Sasso