**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE (WILMINGTON)**

| | | |
|---|---|---|
| In re: | : | |
| MORTGAGE LENDERS NETWORK, USA, INC. | : | No. 1:07-CV-00268 |
| | : | |
| Debtor | : | |

_____

| | |
|---|---|
| MITCHELL HEFFERNAN | : |
| Appellant | : |
| | : |
| vs. | : |
| | : |
| STATE OF CONNECTICUT | : |
| Appellee | : |

_____

<u>**REPLY BRIEF OF APPELLANT MITCHELL HEFFERNAN**</u>

This Reply Brief is filed this 25th day of January, 2008 on behalf of Appellant Mitchell Heffernan by his undersigned attorneys:

> BALICK & BALICK, LLC
> BY:  __/s/ James E. Drnec_____
> JAMES E. DRNEC, ESQUIRE (DE Bar #3789)
> 711 King Street
> Wilmington, DE 19801
> (302) 658-4265
>
> and
>
> ROBERT SCANDONE, ESQUIRE
> 1800 John F. Kennedy Blvd., Suite 200
> Philadelphia, PA 19103
> (215) 563-6571
> Admitted Pro Hac Vice
>
> and
>
> JUDITH P. RODDEN, ESQUIRE
> POZZUOLO & PERKISS, P.C.
> 2033 Walnut Street
> Philadelphia, PA 19103
> (215) 977-8200
> Admitted Pro Hac Vice
>
> Attorneys for Appellant Mitchell Heffernan

I.     **INTRODUCTION**

This Reply Brief of the Appellant is filed in response to the numerous misrepresentations, outright misstatements and errors, legal as well as procedural, contained in the Brief of the Appellee, the State of Connecticut ("Connecticut").

This case is before this Honorable Court upon a ruling of the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on Appellant Mitchell L. Heffernan's ('Heffernan") Motion to Enjoin Connecticut from instituting a criminal prosecution against him for the pre-petition debts of Mortgage Lenders Network USA, Inc. (the "Debtor") under Section 105 of the Bankruptcy Code.  Heffernan asserts in this appeal that the Bankruptcy Court abused its discretion in failing to even consider the equitable authority Congress gave to it by Section 105 of the Bankruptcy Code.

Based on the Brief of the Appellant previously filed with this Court, the Appendix and this Reply Brief, Heffernan most respectfully requests that this Court find that the Bankruptcy Court erred as a matter of law and abused its discretion in denying Heffernan's Motion and, therefore, the ruling of the Bankruptcy Court must be reversed.

II.     **ARGUMENT**

    A.     **CONNECTICUT STATES FACTS IN ITS BRIEF WHICH ARE NOT TRUE**

        1.     **The Bankruptcy Court Made No Factual Findings**

On April 10, 2007, the Bankruptcy Court held a hearing on Heffernan's Motion.  The Bankruptcy Court heard legal argument from the parties and from Laura Davis Jones, Esquire, counsel for the Debtor. *See Transcript, April 10, 2007, Appendix at 118-165.*[1]  Connecticut

---

[1] Reference to the Transcript of the hearing before the Bankruptcy Court on April 10, 2007 will hereinafter be referred to throughout this Reply Brief to as  "Transcript at ___, App. at ____",  designating the numbered page of the Transcript and the page in the Appendix containing the referenced Transcript cite.  Additionally, all cites to the

makes an elaborate argument in their Brief that Heffernan presented no facts below and is trying to turn everything before the Bankruptcy Court as a "fact" for the purposes of this appeal. *Appellee's Brief at 5-6.* Connecticut is clearly wrong and misrepresents this action below as demonstrated by the following:

1.      Despite an offer of proof of live testimony by Heffernan below, the Bankruptcy Court ruled upon the papers and oral argument without taking any testimony, *Transcript at 18 App. at 135;*

2.      Heffernan requested the right to elicit testimony of Connecticut officials at the hearing before the Bankruptcy Court on April 10, 2007 but counsel for Connecticut refused to produce the witnesses or accept service of a subpoena to attend and testify, *Transcript at 41, App. at 158*;

3.      Counsel for the Debtor, Laura Davis Jones, Esquire, offered to the Court the testimony of Daniel Scouler, the Debtor's Chief Restructuring Officer, to the limited issue of the pre-petition commissions owed to Connecticut employees by the Debtor, which the Court declined, *Transcript at 21, App. at 138;*

4.      Since the Court declined the offer of his testimony, in order to clarify the statements made by Laura Davis Jones, Esquire at the hearing on April 10, 2007, Heffernan attached as Exhibit "A" to his Opening Brief a sworn affidavit from Daniel Scouler containing under oath the assertions made by the Debtor's counsel on the record in response to questions from the Bankruptcy Court regarding the pre-petition commissions owed to Connecticut

---

record are designated by reference to the docket number in the Bankruptcy Court below as "D.I.___". Reference to the Appendix filed thereto with Heffernan's Opening Brief and made a part hereof are referred to throughout this Reply Brief as "App." and the designated page of the Appendix as "App at ____".  For example, *D.I., 357, App. at 17*, refers to bankruptcy court docket item number 367, page 17 of the Appendix.

employees by the Debtor which go to the very heart of this matter, *Transcript at 21-22, App. at 138-139, Exhibit "A" to Heffernan's Brief.*[2]

If Connecticut's position regarding the factual assertions are relevant, then Heffernan submits that the Bankruptcy Court erred as a matter of law in ruling on Heffernan's Motion without conducting an evidentiary hearing and, therefore, at the minimum this case should be remanded to the Bankruptcy Court for a hearing on the merits of the Motion with the Court ruling after making findings of fact and conclusions of law.

## B.    THE BANKRUPTCY COURT HAS THE AUTHORITY AND DISCRETION TO ENJOIN A CRIMINAL PROSECUTION

Connecticut argues in its Brief that the Bankruptcy Court correctly denied Heffernan's Motion because: (1) the automatic stay provisions and exceptions of 11 U.S.C. § 362(b)(1) are carved in stone with no deviation; (2) Heffernan, even though he is a director and former officer of the Debtor, is not able to seek relief under the Bankruptcy Code; and (3) it is not a proper exercise of the Bankruptcy Court's equitable powers under 11 U.S. C. § 105 to enter an injunction against Connecticut. *Appellee's Brief at 11-12.* Connecticut is wrong on all accounts for the following reasons.

### 1.    The Exception to the Automatic Stay for Criminal Proceedings Under Section 362(b)(1) Do Not Apply Where the Purpose of the Prosecution is to Collect a Debt

It has long been established by the United States Court of Appeals for the Third Circuit that a bankruptcy court has broad equitable powers to take any actions which are necessary or appropriate to carry out all of the provisions of the Bankruptcy Code. In re: Continental Airlines,

---

[2] Connecticut's criticism of the sworn affidavit of Daniel Scouler is nothing more than a red herring for Connecticut's failure to follow Bankruptcy appellate procedure before this Court. Connecticut fails to cite to the Transcript or the Appendix in support of its assertions before this Court. This is yet one more example of Connecticut's reasserting its publicly stated position that a federal court in Delaware is not going to tell Connecticut what it can do.

203 F.3d 203, 211 (3rd Cir. 2000). It is well recognized by the Third Circuit as well as federal courts throughout the United States that the automatic stay provisions and the exceptions of Section 362 are not meant to strip a bankruptcy court of its power or to limit the court's jurisdiction or power to enjoin but simply operate to protect the bankruptcy estate. <u>In re: Johns-Manville Corp.</u> 26 Bankr. 420, 425 (S.D.N.Y. 1983) See also, *2 Collier on Bankruptcy §§ 362.02 and 362.05 (15th ed. 1982).* Despite the exceptions to the automatic stay provisions of Section 362, it is well recognized that a bankruptcy court has the equitable powers to enjoin a criminal prosecution where the primary purpose of the prosecution is to collect a debt. In such circumstances it flies in the face of the very purpose of the Bankruptcy Code for a court not to enjoin the action. See e.g., <u>In re: Padgett, Padgett v. Latham</u>, 37 B.R. 280 (Bankr. W.D. KY 1983); <u>In re: David Caravona</u>, 347 B.R. 259 (Bankr. N.D. OH 2006); <u>In re: Muncie</u>, 240 B.R. 725 (Bankr. S.D. OH 1999); <u>Howard v. Allard</u>, 122 B.R. 696 (W.D. KY 1991); <u>In re: Bicro Corp,</u> 105 B.R. 255(M.D.P.A. 1988); and *Collier on Bankruptcy*, Section 362.05[1] [b] (15th rev. ed. 2006).

Connecticut cites no law in its Brief which distinguishes the law and legal precedent cited by Heffernan for this very proposition because there is no legal precedent which acts as an absolute bar to the relief Heffernan requested below. Further, in the case at bar, Heffernan presented ample evidence to the Bankruptcy Court through the quoted, published articles of three Connecticut officials including the State Attorney General which leave no doubt that the only thing Connecticut wants from Heffernan is for him to pay the unpaid wages and commissions owed by the Debtor. These news media articles are so overwhelming in support of Connecticut's motives that Connecticut never ever tried to dispute the statements of its officials until now in their Brief. The undisputed statements in the record below are as follows:

1.      Attorney General Richard Blumenthal - <u>April 5, 2007</u> – *Dow Jones News* –

Connecticut has no intention of asking the bankruptcy court to order the wages paid, Blumenthal said. All the state wants to do is arrest violators of its criminal laws. However, **<u>it's not unheard of for restitution to be part of a plea deal in such cases, he admitted.</u>** (emphasis added).

**"People are often persuaded by criminal prosecutions to do the right thing," Blumenthal said. "It's a matter of simple justice."** (emphasis added).

*D.I. 430, App. at 49, 85-86.*

2.      Nancy Steffens – Connecticut Department of Labor spokesperson – <u>March 26, 2007</u> – *Reuters*:

"The company declared bankruptcy, which requires us to go through a criminal court to get former employees their money", Steffens said **"Our real purpose is to get people money owed to them.  If we can work out a settlement without criminal charges that's great".** (emphasis added).

*D.I. 430, App. at 48, 78.*

3.      Gary Pechie – Connecticut Department of Labor official - <u>March 20, 2007</u> – *Eyewitness News Channel 3, WFSB-TV,  Hartford, CT:*

Prosecutors told Eyewitness News that because the company declared bankruptcy, criminal charges may be the only way to claim the money.

**"The Judge could order restitution………..**Pechie stated………..

*D.I. 430, App. at 47-48, 76.*

As indicated above, the plain and clear language of the Connecticut officials including the State Attorney General leave no doubt that Connecticut has one motive in its attempt to arrest and prosecute Heffernan - to collect whatever monies are due the employees of the Debtor from Heffernan.  In accordance with Sections 362 and 105 of the Bankruptcy Code, this arrest and prosecution is enjoinable.  Therefore, it was an abuse of discretion and an error of law for the

Bankruptcy Court to deny Heffernan's Motion. Accordingly, Heffernan most respectfully submits that this Honorable Court must reverse the ruling of the Bankruptcy Court.

**2.      Heffernan Has the Right to Avail Himself of Relief Under the Bankruptcy Code as a Director and Former Officer of the Debtor**

Connecticut argues in its Brief that the Bankruptcy Court held that the provisions and protections of the Bankruptcy Code do not apply to Heffernan and actually claims that to grant the relief Heffernan is seeking goes beyond the intent of Congress. *Appellee's Brief at 12-13*. Connecticut is wrong and ignores legal precedent which granted the exact same relief Heffernan seeks.

In <u>In re: Jerzak,</u> 47 B.R. 771, 773-774 (W.D. Wis. 1985), in facts almost identical to the case at bar, the court enjoined a criminal prosecution against the principals of the debtor where an employee of the debtor filed a claim for unpaid pre-petition wages with the state department of labor. The court in <u>Jerzak</u> held that the state's actions in attempting to criminally prosecute the principals of the debtor for the pre-petition wages unpaid by the debtor is the same as collecting a debt and, therefore, establishes that the primary purpose of the state criminal prosecution was debt collection. <u>Id.</u> Based on these facts, the criminal prosecution of the principals of the debtor was enjoined. <u>Id.</u>   <u>In re: Redenbaug</u>h, 37 B.R. 383 (Bankr. C.D. Ill. 1984) the bankruptcy court held that a state is prohibited from using criminal prosecution for the purpose of collecting a debt.

Despite Connecticut's assertions to the contrary, it is well established that the automatic stay provisions of 11 U.S.C. § 362 read together the with Bankruptcy Court's broad equitable powers under Section 105 permits the Bankruptcy Court to enjoin actions against other than the debtor. <u>A.H. Robins Co. Inc. v. Piccinin</u>, 788 F.2d 994, 999 (4th Cir. 1986), cert. denied 479

U.S. 876; 107 S.Ct. 251 (1986). In <u>Robins</u>, the United States Court of Appeals for the Fourth Circuit held that Sections 362 and 105 read together permit a bankruptcy court to enjoin actions against non-debtors where any claim against the non-debtor had a potential impact on the bankruptcy estate. The Fourth Circuit recognized that when there is such an identity between the debtor and the non-debtor that results in the debtor being the real party because any judgment against the non-debtor is really a judgment against the debtor the equities require that the protections of the Bankruptcy Code, specifically Sections 362 and 105, apply to the non-debtor. <u>Id.</u> In <u>American Film Technologies, Inc. v. Taritero,</u> 175 B.R. 847, 850 (Bankr. DE 1994) the Bankruptcy Court enjoined a state fraud action against the non-debtor directors of the debtor solely based on their capacity as directors of the debtor holding that any judgment against the non-debtor subjected the debtor to liability.

The <u>Robins</u> exception extending the automatic stay to a non-debtor third party is applicable in a proceeding against the non-debtor defendant where there is an indemnity clause between the non-debtor and the debtor making the debtor responsible for any monetary judgment which results. <u>Robins</u> at 999-1000. See also <u>In RE W.R. Grace & Co., et al., Debtors; W.R. Grace & Co. et al., v. Chakarian</u>, 2005 Bankr. LEXIS 579 (Bankr. DE 2005); <u>Protarga, Inc., v. Webb (In re: Protarga)</u>, 329 B.R. 451, 479-480 (Bankr. DE 2005); accord <u>American Film Technologies</u>, 175 B.R. at 850. (Bankr. DE. 2004).

In <u>In re Eagle-Picher Indus., Inc.</u>, 963 F.2d 855, 877 (6th Cir. 1992) the United States Court of Appeals for the Sixth Circuit held that the automatic stay extended to two non-debtor officers of the corporation where an absolute indemnity agreement existed because if the action against the officers was allowed to proceed it would essentially be a suit against the debtor.

The Bankruptcy Court, relying upon <u>Robins</u>, extended the automatic stay provisions to a non-debtor finding a close identity between the third party non-debtor and the debtor. <u>In Re.W.R. Grace</u> at 9. The Bankruptcy Court held that any judgment against the non-debtor would be a debt of the debtor because any judgment or adverse finding against the non-debtor triggered an indemnification between these parties and have a possible impact on the bankruptcy estate. <u>Id.</u> at 12.

Just like in <u>Robins</u>, in this case Heffernan is a director and former officer of the Debtor. In fact, Heffernan was an officer of the Debtor up until when the Debtor commenced its bankruptcy case. The Debtor's By-Laws contain an indemnification provision which provide for an absolute indemnification to Heffernan for any and all actions arising either criminal or civil. *D.I. 430, App. at 58-59.* Counsel for the Debtor even agrees that any claim or judgment obtained by Connecticut against Heffernan is really a debt of the Debtor and falls under the indemnification provisions of the Debtor's By-Laws. Laura Davis Jones, Esquire, counsel for the Debtor stated to the Court at the hearing on Heffernan's Motion:

Counsel:      "Your Honor, just a brief couple comments. Your Honor, I wanted to confirm that Mr. Heffernan is a director of the Debtor – as a director and as set forth in the Movant's papers, he is provided with indemnification protections."

*Transcript, April 10, 2007, at 43, App. at 160.*

In accordance with <u>Robins</u>, because of the indemnification provisions in the Debtor's By Laws, Heffernan most respectfully submits that there is such an identity between him and Debtor that any judgment or claim against him by Connecticut is really a judgment or debt of the Debtor. <u>Robins</u> requires that the Bankruptcy Court should have read Sections 362 and 105 together and enjoin Connecticut from arresting and prosecuting him for the debts of the Debtor. Therefore, Heffernan most respectfully submits that the Bankruptcy Court erred as a matter of

law in denying his Motion.    Accordingly, Heffernan most respectfully submits that this Honorable Court must reverse the ruling by the Bankruptcy Court.

**3.    The Debtor Will be Harmed by Any Adverse Judgment Against Heffernan**

Connecticut argues that there is no harm or impact to the Debtor by Connecticut's arrest and criminal prosecution of Heffernan for the unpaid pre-petition debts of the Debtor. Connecticut is absolutely incorrect and clearly does not understand the Bankruptcy Code.

First, as set forth above, any judgment against Heffernan is really a judgment against the Debtor because the Debtor is obligated to indemnify Heffernan in accordance with the Debtor's By Laws.    Connecticut argues that this indemnification provision does not have any affect on the Debtor's bankruptcy estate because: (a) Heffernan and the Debtor jointly and voluntarily agreed to the dismissal of a lawsuit concerning the Debtor's indemnification obligation; and (b) the Debtor's counsel made an "off-the-cuff remark" on the record before the Bankruptcy Court that Heffernan is entitled to indemnification protection. *Appellee's Brief at 24.*  Connecticut ignores the law and the record before this Court.

As explained in length above and in Heffernan's Opening Brief, in reliance on <u>Robins</u> the indemnification provisions in the Debtor's By Laws, require that the Debtor indemnify Heffernan for any judgment resulting in Connecticut.    There is no doubt that Connecticut is seeking to collect from Heffernan the unpaid pre-petition wages allegedly owed to Connecticut employees by the Debtor.    Based on <u>Robins</u> there is an identity between Heffernan and the Debtor which by operation of law makes any judgment or claim against him a judgment or debt of the Debtor.    Based on <u>Robins,</u> the Bankruptcy Court was required to have read Sections 362

and 105 together and enjoin Connecticut from arresting and prosecuting Heffernan for the unpaid pre-petition debts of the Debtor.

In complete ignorance of the Bankruptcy Code, Connecticut seems to suggest that Heffernan is not entitled to an injunction or indemnification protection because: (a) he has obeyed the command of the Bankruptcy Code and has not directed the Debtor to pay these pre-petition wages after the Debtor commenced its bankruptcy case; and (b) the Debtor has not filed a brief in support of Heffernan's Motion.  Connecticut's argument again must fail.

In respect for the Bankruptcy Code, Heffernan has at no time abused his capacity as a director of the Debtor by directing the Debtor to pay pre-petition wages which is expressly forbidden by the Bankruptcy Code.

Moreover, the Debtor, through its counsel, supported and joined in Heffernan's Motion on the record before the Bankruptcy Court and explained to the Court the law related to the relief sought by Heffernan in far more detail than an "off-the-cuff remark", as follows:

Ms. Davis Jones:      Your Honor, just a brief couple comments.  Your Honor, I wanted to confirm that Mr. Heffernan is a director of the Debtor – as a director and as set forth in the Movant's papers, he is provided with indemnifications protections.

                                 Your Honor the case law is clear that if they're trying to collect a debt owed by a corporate debtor, that party's that's seeking to collect cannot and should not be able to take an end run around the automatic stay by pursuing an officer either directly or through a veiled threat or – either an officer of a director.

                                 Your Honor, as a practical matter, the Courts recognize that pursuing and officer or director to pay the debts otherwise payable by a Debtor is the same as pursuing the corporation because the Debtor will have to honor its obligations under the indemnification protections provided to its officers and directors.

                                 Your Honor, as these are claims that can and will be dealt with through the claim objection process, as Mr. Scandone states, it's an impossible

> situation if directors and officers can be pursued for a corporation's nonpayment of liabilities by virtue of the Bankruptcy Code.
>
> Your Honor the idea is that we're suppose to have a centralized process. The corporation files, it goes through its bankruptcy process and it deals with its distributions to its creditors pursuant to the Bankruptcy Code and the absolute priority rule.
>
> Your Honor, we join in the motion – the motion be granted.

*Transcript at 43-44, App. at 160-161.*

Based on the foregoing, Heffernan most respectfully submits that Connecticut's argument must fail.

Second, Connecticut argues that there is no collateral estoppel affect on the Debtor for any action Connecticut takes against Heffernan. *Appellee's Brief at 24-25.* This argument also fails.

The doctrine of collateral estoppel bars the relitigation when the parties, the issues and the subject matter are the same. Parklane  Hosiery Co., Inc. v. Shore, 439 U.S. 322; 99 S.Ct. 645 (1979).   In a bankruptcy context involving an action against director or officer non-debtors, the Courts have issued preliminary injunctions under 11 U.S.C. § 105 enjoining  the actions holding the debtor will be irreparably harmed by its ability to defend the same action if the same issue is implicated in the bankruptcy estate. American Film Technologies at 850-851;  In re: Ionosphere Clubs, Inc., 111 Bankr. 324, 435 (Bankr. S.D.N.Y. 1990)(enjoining action against directors because any finding against the directors would extend to the debtor under the doctrine of collateral estoppel); Sudbury, Inc. v. H. Escott, 140 Bankr. 461 (Bankr. N.D. Ohio (1992) (enjoining fraud action against former officers and directors until after reorganization because the doctrine of collateral estoppel would require the debtor to defend the fraud action as if the debtor was a party).

In this case, collateral estoppel is invoked here because there is a dispute concerning the pre-petition wages or commissions which Connecticut claims Heffernan is criminally liable for their payment. The threatened arrest and prosecution by Connecticut is not because of any wrongdoing or misconduct on the part of Heffernan but solely by reason of Heffernan's former capacity as a director and former officer of Debtor. There is no dispute that these very same pre-petition unpaid wages are debts in the Debtor's bankruptcy case and the amounts owed, if any, are in dispute. A finding in Connecticut concerning these wages would in essence be a debt of the Debtor's bankruptcy estate which the Debtor would be unable to challenge under the doctrine of collateral estoppel. If the Debtor wanted to challenge the very pre-petition wages which are disputed here, the Debtor would be required to defend its rights in the Connecticut action, violating the automatic stay provisions of 11 U.S.C. § 362 or be estopped in this bankruptcy case by the findings in Connecticut thus impairing Debtor's ability to challenge these wages.

Therefore, a finding in Connecticut against Mitchell Heffernan would estop the Debtor from disputing these wages in the bankruptcy estate and violates the automatic stay provisions of 11 U.S.C. §362.

Accordingly, Heffernan most respectfully submits that any judgment against Heffernan in Connecticut is a judgment against the Debtor and, therefore, there is direct harm to the Debtor by any action taken against Heffernan. Heffernan most respectfully submits that the Bankruptcy Court erred as a matter of law and must be reversed.

## C.    CONNECTICUT HAS FAILED TO ACT IN GOOD FAITH

### 1.    Connecticut Seeks Restitution From Heffernan For the Unpaid Pre-Petition Debts of the Debtor

The record before this Court points to only one logical conclusion - that restitution for the unpaid debts of the Debtor is clearly and unequivocally what Connecticut wants from Heffernan

and it will reach that goal by any means including the criminal prosecution of Heffernan. The facts in support of this conclusion are as follows:[3]

1.    On April 5, 2007, Connecticut Attorney General Richard Blumenthal admitted, in a published article, that restitution is really what Connecticut was seeking to extract from Heffernan through the criminal process, for the unpaid wages of the Debtor. The Attorney General was quoted in a published article as follows:

April 5, 2007 – *Dow Jones News*

"There is a very powerful message that employers must be held accountable to pay for work," said Connecticut Attorney General Richard Blumenthal, explaining why the state may prosecute Heffernan "or others who may have allegedly broken our criminal laws."

**Connecticut can't force Mortgage Lenders to pay the employees now that it's in Chapter 11, the attorney general admitted. Unless companies provide otherwise -- and many do -- unpaid employees fall in with the rest of those waiting for a fractional recovery that may never arrive.** (emphasis added).

Connecticut has no intention of asking the bankruptcy court to order the wages paid, Blumenthal said. All the state wants to do is arrest violators of its criminal laws. However, **it's not unheard of for restitution to be part of a plea deal in such cases, he admitted.** (emphasis added).

**"People are often persuaded by criminal prosecutions to do the right thing," Blumenthal said. "It's a matter of simple justice."** (emphasis added).

*D.I. 430, App. at 49, 85-86.*

---

[3] In its attempt to overcome the multitude of information in the record which clearly and unequivocally supports that Connecticut is seeking restitution from Heffernan for the unpaid wages and commissions owed by the Debtor, Connecticut argues in its Brief that: (a) there are no facts proven before the Bankruptcy Court; and (b) that Heffernan is inaccurate in pointing to the record below in support of his Opening Brief. *Appellee's Brief at 5-6.* Even though Connecticut argues that there were no facts or very limited facts before the Bankruptcy Court, Connecticut claims this Court can not set aside any factual findings made by the Bankruptcy Court unless those findings are clearly erroneous. *Appellee's Brief at 2.*

2.    Nancy Steffens, Connecticut Department of Labor spokeswoman, is quoted in a published article preaching the same exact restitution message as Attorney General Blumenthal, as follows

> <u>March 26, 2007</u> – *Reuters*:
>
> "The company declared bankruptcy, which requires us to go through a criminal court to get former employees their money", Steffens said **"Our real purpose is to get people money owed to them.  If we can work out a settlement without criminal charges that's great".** (emphasis added).

*D.I. 430, App. at 48, 78.*

3.    Gary Pechie, a state Department of Labor was interviewed on the evening news concerning unpaid wages of the Debtor on March 20, 2007 and proclaimed the exact same message as Attorney General Blumenthal and Department of Labor spokesperson Nancy Steffens – restitution is really what Connecticut is seeking from Heffernan for the debts of the Debtor.  This interview was published by the television station on its website on the internet in the public domain, as follows:

> <u>March 20, 2007</u> – *Eyewitness News Channel 3,WFSB-TV,  Hartford, CT:*
>
> "The [Labor] department claims that the company owed its former employees wages that could top $3,000,000.
>
>           *            *            *            *
>
> Prosecutors told Eyewitness News that because the company declared bankruptcy, criminal charges may be the only way to claim the money.
>
>  **"The Judge could order restitution**, but if not, it's a $2,000 to $5,000 fine and five years of imprisonment for each offense." Pechie said.  "And with 61 counts, you're talking a hefty fine and a year in jail". (emphasis added).

*D.I. 430, App. at 47-48, 76.*

Connecticut claims in its Brief that these news articles published in the Connecticut community and in the public domain on the world wide web are unsubstantiated. *Appellee's Brief at 18.*  In the Bankruptcy Court, Connecticut never raised any issue about the news media articles and acquiesced in their entry into the record below with no attempt to deny the statements in the articles and reports. Connecticut is wrong that these articles are unsubstantiated for the following reasons:

1.      Connecticut had ample opportunity to have Gary Pechie and Nancy Steffens present at the hearing before the Bankruptcy Court on April 10, 2007 to testify and refute any inaccuracies in their published statements.  Despite this opportunity to offer contrary testimony, Connecticut refused to accept subpoenas from Heffernan's counsel for them to testify and refused to voluntarily produce them on April 10, 2007.  *Transcript at 41-42, App. at 158-159.* No affidavit or sworn statement was submitted by Connecticut refuting the accuracy of the news articles. Connecticut had the opportunity to present live testimony to the Bankruptcy Court or contrary affidavits or statements and chose not to do so.  Therefore, only one conclusion is possible – that the quoted statements in the articles are accurate as reported.

2.      Heffernan requested that the Bankruptcy Court take judicial notice of these news media articles and reports in his Supplemental Memorandum of Law filed in support of his Motion to Enjoin the State of Connecticut.  *App. at 48.*   The Bankruptcy Court and this Court are permitted under Rule 201 of the Federal Rules of Evidence to take judicial notice of newspaper articles and the like published in the public domain. See also <u>Benak v. Alliance Capital Management, L.P.</u>, 435 F.3d 396 (3rd Cir. 2006). There was lengthy argument by Heffernan's counsel before the Bankruptcy Court about these news media articles.  *App. at 128-131.* Connecticut had the opportunity to challenge these news reports and Heffernan's request to

the Bankruptcy Court for judicial notice through either its Opposition to Heffernan's Motion, the affidavits submitted in opposition and/or its oral argument.  Connecticut willfully failed to even address the news media articles and reports at all until its Brief on this appeal.

Further, Connecticut cites no legal authority which allows them to challenge information in the record below in its opposition to Heffernan's appeal nor has Connecticut filed a cross appeal. As demonstrated by the very words of the quotes from the Connecticut officials in these news media reports and articles, these news media articles and reports tell the exact same story and corroborate each other without contradiction. Therefore, Heffernan most respectfully submits that Connecticut is too late now – these news media reports and articles are part of the record before this Court and this Court and Heffernan have the right to rely upon these news media articles.

> **2.  CONNECTICUT IS UNABLE TO CITE ANY LEGAL PRECEDENT TO SUPPORT THE ARREST AND PROSECUTION OF AN OFFICER FOR THE UNPAID PRE-PETITION DEBTS OF THE DEBTOR**

From the beginning of Connecticut's threatened action against Heffernan, counsel for Heffernan have asked Connecticut numerous times for legal authority which supports Connecticut's actions in threatening criminal action against Heffernan for the debts of the Debtor.  Connecticut has failed miserably in its attempt to point to even one case or one instance where it arrested and prosecuted an officer of a bankrupt company for the unpaid obligations of the bankrupt company.  This case is different for the very fact that the wages and/or commissions claims asserted by Connecticut here result from the Debtor's financial hardship and the implosion of the sub-prime mortgage industry.  There is absolutely no allegation of any wrong doing on the part of Heffernan.

Instead of responding to Heffernan's request for legal precedent or authority to proceed against a former officer of a bankrupt company, Connecticut has ignored on at least three occasions Heffernan's assertion that there is no legal authority to arrest and prosecute him, a former officer of a bankrupt corporation: (1) in response to the pleadings before the Bankruptcy Court, *App. at 69-71*; (2) in oral argument on this Motion before the Bankruptcy Court; and (3) in response to Heffernan's Opening Brief *Opening Brief at 37.*    In the Brief of Appellee, Connecticut asserts a long circuitous argument about the statute, claiming the statute only permits fines and then goes to great lengths to explain the Connecticut state procedures for issuing an arrest warrant all in their attempt to overcome the facts before this Court – that Connecticut's real motive is restitution. Appellee's Brief at 8-9.

There is not one instance that we have been able to find or Connecticut has cited in the history of this statute where Connecticut has arrested and prosecuted an official of a bankrupt corporation for the wages due by the corporation, which is not the legislative intent of the statute.

### III.    CONCLUSION

Based on Mitchell Heffernan's Opening Brief and the foregoing, Mitchell Heffernan most respectfully submits that the Bankruptcy Court erred as a matter of law and abused its discretion by: (a) ignoring the very intent and purpose of the Bankruptcy Code by denying Heffernan's Motion; (b) arbitrarily denying Heffernan's Motion under Section 362 of the Bankruptcy Code; (d) failing to balance the equities or even consider Heffernan's Motion under Section 105 of the Bankruptcy Code when there is unequivocal evidence in the record that what Connecticut is seeking from Heffernan is restitution and the collection of pre-petition debts of the Debtor; (e) failing to recognize that any judgment against Heffernan is a judgment against the Debtor pursuant to the indemnification provisions of the Debtor's By-Laws; and (f) failing to

recognize that Connecticut is acting in bad faith by seeking to extract a preference for Connecticut employees of the Debtor in its attempt to coerce Heffernan to pay the debts of the Debtor.

If, as Connecticut asserts and believes, there were hardly any facts before the Bankruptcy Court to make factual determinations, then Mitchell L. Heffernan most respectfully asserts that this case must be remanded back to the Bankruptcy Court for an evidentiary hearing, factual determinations and conclusions of law. If this Honorable Court determines that the Bankruptcy Court had enough on the pleadings and memoranda before it to make a ruling on Heffernan's Motion, then Mitchell L. Heffernan most respectfully submits that the Bankruptcy Court's ruling must be reversed.

Accordingly, Mitchell L. Heffernan most respectfully submits that this Honorable Court must reverse the judgment of the Bankruptcy Court and enter an injunction against Connecticut and in favor of Mitchell L. Heffernan. Or in the alternative, remand this case to the Bankruptcy Court for trial and findings of fact and conclusions of law.

Respectfully submitted:

BALICK & BALICK, LLC

Dated: January 25, 2008          BY:   /s/ James E. Drnec
                                 JAMES E. DRNEC, ESQUIRE (DE#3789)
                                 711 King Street
                                 Wilmington, DE 19801
                                 Telephone: (302) 658-4265
                                 Facsimile: (302) 658-1682

                                      And

                                 ROBERT SCANDONE, ESQUIRE
                                 1800 John F. Kennedy Blvd. Suite 200
                                 Philadelphia, PA 19103
                                 Telephone: (215) 563-6571
                                 Facsimile: (215) 854-0083

And

POZZUOLO & PERKISS, P.C.
JUDITH P. RODDEN, ESQUIRE
2033 Walnut Street
Philadelphia, PA 19103
Telephone:  (215) 977-8200
Facsimile:  (215) 977-9663


Attorneys for Appellant Mitchell L. Heffernan

REPLY BRIEF OF APPELLANT
MITCHELL HEFFERMAN V. STATE OF CONNECTICUT

TABLE OF CONTENTS

SECTION_____PAGE

I.      Introduction………………………………………………………..1

II.     Argument…………………………………………………………1
        A.      Connecticut States Facts in its Brief Which Are Not True…...1

                1.      The Bankruptcy Court Made No Factual Findings……1

        B.      The Bankruptcy Court Has the Authority And
                Discretion to Enjoin A Criminal Prosecution………………..3

                1.      The Exception to the Automatic Stay for Criminal
                        Proceedings Under Section 362 (b)(1) Do Not Apply
                        Where the Purpose of the Prosecution is to Collect
                        A Debt…………………………………………………3

                2.      Heffernan Has the Right to Avail Himself of Relief
                        Under the Bankruptcy Code as a Director and
                        Former Officer of the Debtor………………………6

                3.      The Debtor Will be Harmed by Any Adverse
                        Judgment Against Heffernan………………………9

        C.      Connecticut Has Failed To Act In Good Faith……………12

                1.      Connecticut Seeks Restitution From Heffernan For
                        The Unpaid Pre-Petition Debts of the Debtor……...12

                2.      Connecticut Is Unable To Cite Any Legal Precedent
                        To Support The Arrest and Prosecution of an Officer
                        For the Unpaid Pre-Petition Debts of the Debtor….16

III.    Conclusion

**REPLY BRIEF OF APPELLANT**
**MITCHELL HEFFERNAN V. STATE OF CONNECTICUT**

**TABLE OF AUTHORITIES**

**CASES**                                                                          **PAGE**

A.H. Robins Co., Inc v. Piccinin, 788 F. 2d 994, 999 (4th Cir. 1986 ), cert denied 479  U.S. 876; 107 S. Ct. 251 (1986)……………………………………………………………………...6, 7,8.9

American Film Technologies, Inc v. Taritero,  175 B.R. 847, 850 (Bankr. DE 1994)…….7,11

Benak V. Alliance Capital Management, L.P., 435 F.3d 396 (3rd  Cir. 2006)……………….15

Howard v. Allard, 122 B.R. 696 (W D. KY 1991)……………………………………………4

In re: Bicro Corp. 105 B R. 255 M.D.P.A. 1988)………...........................................4

In re: Continental Airlines, 203 F. 3d. 203 211 (3rd  Cir.2000)……………………………...3,4

In re: David Caravona, 347 B.R. 259 (Bankr. N.D. OH 2006)………………………………..4

In re: Eagle-Picher Indus., Inc., 963 F.2d 855, 877 (6th Cir. 1992)…………………………...7

In re: Ionosphere Clubs, Inc., 111 Bankr. 324 (Bankr. S.D.N.Y. 1990)……………………………………………………………………………………………11

In re: Jerzak, 47 B.R. 771, 773-774 (W.D. Wis. 1985)……………………….………………6

In re: Johns-Manville Corp. 26 Bankr. 420 425 (S.D.N.Y. 1983)…………………..………...4

In re: Muncie, 240 B.R. 725 (Bankr. S.D. OH 1999)…………………………………..……...4

In re: Padgett, Padgett v. Latham, 37 B.R. 280 (Bankr. W.D. KY 1983)………………..….. 4

In re: Redenbaugh, 37B.R. 383 (Bankr. C.D. I11. 1984)……………………………….…..…..6

In re: W.R. Grace & Co., et al., Debtors; W.R. Grace & Co. et al., v. Chakarian, 2005 Bankr. LEXIS 5791 (Bankr. DE 2005)………………………………………..…….… 7

Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322; 99 S.ct. 645 (1979)……………… 11

Protarga, Inc., V. Webb (In re: Protarga), 329 B.R. 451, 479-480 (Bankr. DE 2005)………..7

Sudbury Inc. v. H. Escott, 140 Bankr. 461 (Bankr. N.D. OH 1992)……………………… 11

**STATUTES**_____

11 U.S.C. §105…………………………………………………………………1,3,5,7,8,9,11

11 U.S.C. §362 …………………………………………………… …………3,5,6,7,8,9,12

**OTHER AUTHORITIES**_____

Collier on Bankruptcy §§ 362.02 and 362.05 (15th ed. 1982)…………………………………4

Collier on Bankruptcy, Section 362.05 [1] [b] (15th rev. ed 2006)……………………………4

# BALICK & BALICK LLC
### ATTORNEYS

January 25, 2008

Sidney Balick

Adam Balick

James Drnec

Joseph Naylor

**VIA CM/ECF AND HAND DELIVERY**
Magistrate Judge Mary Pat Thynge
United States District Court
for the District of Delaware
844 North King Street, Room 4209
Lock Box 8
Wilmington, DE 19801

> **Re:    *In re: Mortgage Lenders Network, USA, Inc.***
> ***Heffernan v. State of Connecticut, C.A. No. 07-268***

Dear Magistrate Judge Thynge:

  I am local counsel for the Appellant in the above-referenced matter. Included with this letter please find a courtesy copy of Mr. Heffernan's Reply Brief which was filed today.

  If any matter addressed herein raises any question or concern, I remain, as always, available at the call of the Court.

Respectfully Submitted,

James E. Drnec

JD/jz
Enclosure
cc: Judith P. Rodden, Esquire (via electronic mail)
  Francis A. Monaco, Jr., Esquire (via electronic mail)
  Robert W. Clark, Esquire (via electronic mail)